UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL P. ARNONE, III,                 )
                                        )
                Plaintiff,              )        Case No. 1:11-cv-316
                                        )
v.                                      )        Honorable Robert J. Jonker
                                        )
COMMISSIONER OF                         )
SOCIAL SECURITY,                        )
                                        )        **REPORT AND RECOMMENDATION**
                Defendant.              )
_____ )

    This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On July 14, 2006, plaintiff filed his applications for benefits alleging a June 26, 2006 onset of disability.[1] (A.R. 117-24). His claims for DIB and SSI benefits were denied on initial review. (A.R. 71-79). On March 26, 2009, he received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R. 32-68). On August 17, 2009, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 17-26). On February 9, 2011, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

---

  [1]SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, August 2006 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying his claims for DIB and SSI benefits. He asks the court to overturn the Commissioner's decision on the following grounds:

1. The ALJ violated the pain regulation by rejecting plaintiff's complaints without identifying any inconsistency;

2. The ALJ violated the pain regulation by requiring objective support for plaintiff's reported level of symptoms;

3. The ALJ "cherry picked" the medical evidence by citing statements supposedly negating disability without acknowledging immediately adjacent statements that supported disability; and

4. The ALJ relied on immaterial "bad acts" evidence to deny disability.

(Statement of Issues, Plf. Brief at 2, docket # 14; *see also* Reply Brief, docket # 16). Plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the

evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, No. 11-2304, __ F.3d __, 2012 WL 3871353, at * 4 (6th Cir. Sept. 7, 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## **Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from June 26, 2006, through the date of the ALJ's decision. (A.R. 19). Plaintiff had

not engaged in substantial gainful activity on or after June 26, 2006. (A.R. 20). Plaintiff had the following severe impairments: "residuals from an assault, history of a left rectus sheath hematoma, degenerative disc disease, loss of vision in left eye, tinnitus, diabetes mellitus, a mood disorder, and post traumatic stress disorder." (A.R. 20). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 20). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of medium work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with the following additional limitations: can only occasionally balance, stoop, or kneel; has no functional vision in the left eye with corresponding loss of depth perception and peripheral vision, and is limited to performing simple, routine tasks.

(A.R. 20). The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible. (A.R. 20-25). The ALJ found that plaintiff was not disabled at step four of the sequential analysis because he was capable of performing his past relevant work as a maintenance worker and stamp machine operator. (A.R. 25-26).[2]

---

[2] The record documents plaintiff's history of alcohol addiction, intravenous drug use, cocaine addiction, and marijuana use. (A.R. 197, 215, 221, 225, 234, 277, 304, 369, 372, 374). Since 1996, the Social Security Act, as amended, has precluded awards of DIB and SSI benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004). The claimant bears the burden of demonstrating that his drug and alcohol abuse was not a factor contributing to his disability. *See Cage v. Commissioner*, No. 09-4530-cv, __ F.3d __, 2012 WL 3538264, at * 4-6 (2d Cir. Aug. 17, 2012); *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether his drug and alcohol abuse were material to a finding of disability.

**1.**

Plaintiff argues that the ALJ violated the "pain regulation" (20 C.F.R. §§ 404.1529, 416.929) by rejecting his complaints without identifying any inconsistency and by requiring objective support for his reported level of symptoms. (Plf. Brief at 9-13; Reply Brief at 2-4). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, No. 11-2304, __ F.3d __, 2012 WL 3871353, at * 5 (6th Cir. Sept. 7, 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord*, *White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

Nothing in the social security regulations guarantees that a claimant's testimony regarding his subjective functional limitations will be accepted as credible. Sections 404.1529 and 416.929 describe how the Social Security Administration evaluates a claimant's symptoms, including pain. Among other things, the regulations state: "When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce you symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). In making this evaluation, the ALJ considers all the "all the available evidence," including "objective medical evidence" and "other evidence." 20 C.F.R. §§ 404.1529(c), 416.929(c).

The regulations emphasize that objective evidence is a "useful indicator" assisting the ALJ in "making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The Commissioner always attempts to obtain and consider objective medical evidence in reaching a conclusion as to whether the claimant is disabled. (*Id.*).

Symptoms are not objective evidence. They are "subjective and difficult to quantify." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Subsection (c)(3) specifies that symptoms "will be taken into account *as explained in section (c)(4)*." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (emphasis added). This assurance that a claimant's subjective statements "will be taken into account as explained in section (c)(4)" is not a guarantee that such statements will be accepted as credible by the trier of fact. Subsection (c)(4) describes how the ALJ considers all the available evidence and

determines which, if any of the claimant's purported symptoms "can reasonably be accepted as consistent with the objective evidence and other evidence:"

> (4) *How we determine the extent to which symptoms, such as pain, affect your capacity to perform basic work activities.* In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). The ALJ is not required to accept the testimony of any witness, including plaintiff. *See Jones v. Commissioner*, 336 F.3d at 476; *see also Sullenger v. Commissioner*, 255 F. App'x 988, 995 (6th Cir. 2007) ("The ALJ is the [u]ltimate [d]ecider of [c]redibility.").

The ALJ provided a lengthy and detailed explanation why he found that plaintiff's testimony was not fully credible:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered the opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.
>
> * * *
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and

limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The medical evidence shows that the claimant was assaulted on June 26, 2006, and he is alleging that he cannot work due to residuals from the injuries he sustained. The claimant reported to emergency room personnel that several men struck him with flashlights on the head, back, front, and groin region, and he later added that he was kicked several times in the testicles. The claimant was initially treated for a scalp laceration and abdominal pain, and an extensive work-up including chest x-rays, pelvis x-rays, a head CT, and a testicular ultrasound were negative. . . . [T]he claimant was evaluated by M. Madion, M.D. for post traumatic scotoma affecting his eyes, and records show longstanding macular scarring on the left. His visual acuity on September 5, 2006, was 20/20 on the right and 20/200 on the left. On February 6, 2008, it was noted that the claimant's vision was the same (Exhibits 1F, 2F, 11F, 12F, and 20F)[A.R. 181-200, 258-64, 382].

The file also contains progress notes from treating physician A. Singh, M.D., to whom the claimant continued to report abdominal pain and trouble sleeping, and for which he was prescribed Ultram and Trazadone respectively (Exhibit 4F)[A.R. 204-10]. On May 23, 2007, Dr. Singh indicated that the claimant's abdominal pains were probably post traumatic stress disorder more than an organic cause. After Dr. Singh left the practice, the claimant was primarily followed by T. Jones, N.P. at Baldwin Family Health Care. Nurse Jones prescribed Xanax on June 29, 2007 as he reported feelings of anxiety, and she also prescribed narcotics for pain (Exhibits 4F, 14F, and 21F)[A.R. 204-10, 277-92, 383].

The claimant received a physical therapy evaluation on March 5, 2007 at White Cloud Rehabilitation for complaints of shoulder and back pain, but he canceled his first visit and was a no show for the other two visits (Exhibit 13F)[A.R. 265-76]. Nurse Jones eventually referred the claimant to A. Kahn, M.D. after she elected to discontinue his narcotic pain medications. Dr. Kahn initially gave the claimant the benefit of a doubt and prescribed narcotics for his alleged back pain; however, after the claimant tested positive for marijuana, Dr. Kahn discharged him from the practice as he violated the narcotic agreement (Exhibit 19F)[A.R. 369-80].

More recently, the claimant has been followed by R. Ceton, M.D. at the Pine Medical Group, who also referred the claimant to physical therapy to address his complaints of back pain. On November 10, 2008, Dr. Ceton explained that the claimant was seen for a follow-up of back pain, and that he was doing fairly well. The claimant asked for an increase in his Vicodin, but Dr. Ceton was reluctant to comply. Examination showed the claimant was pleasant and in no acute distress with only subprapubic tenderness. Dr. Ceton recommended an updated CT of the abdomen and pelvis and an MRI of the back. Dr. Ceton indicated that the claimant reported he had stopped physical therapy, which he identified as a warning sign that the claimant was not doing all he said he ha[d] been doing, and in other progress notes voiced concern as to why the claimant had been discharged by Dr. Kahn. The lumbar MRI

was done on November 24, 2008, and [it] showed only mild multilevel degenerative disc disease. Physical therapy notes show that the claimant attended three of seven visits between December 9, 2008 and December 31, 2008, and he was officially discharged on January 20, 2009. The claimant did report improvement in his lumbar mobility with treatment and his home exercise program (Exhibits 18F and 22F)[A.R. 355-68, 384-87].

\* \* \*

With regard to mental impairments, the claimant has received treatment from the Newaygo County Mental Health Clinic. In a letter dated March 25, 2009, R. McBride, LMSW, the claimant's outpatient therapist, and N. Alt, M.D., the consulting psychiatrist, explained that the claimant had received therapy from Mr. McBride between October 25, 2006 to April 24, 2007, and from August 28, 2007 to the current time. Dr. Alt had seen the claimant nine times, her assessment of the claimant's condition [was] post traumatic stress disorder and mood disorder, and the claimant was prescribed Invega which was identified as a mood enhancer. Mr. McBride explained that he had discharged the claimant from therapy on April 27, 2007, as he had not been reliable in keeping appointments. The claimant had either canceled (six times) or no-showed (nine times) for a total of fifteen times in seven months. After he restarted therapy in August 2007, he has had two cancellations and seven no-shows. Mr. McBride concluded "that this pattern tells me he may not be reliable in an employment situation" (Exhibits 15F and 17F)[A.R. 293-341, 343-54].

\* \* \*

State agency psychologists determined that the claimant did not have a severe mental impairment (Exhibit 10F)[A.R. 245-57]. In evaluating the March 25, 2009 statement from the claimant's treating sources, the undersigned notes that the claimant's failure to attend counseling is not indicative of [a] medically determinable impairment that would impose work limitations. The claimant indicated at the hearing that some of the no shows were due to snow and some were due to court dates. In addition, the psychiatric treatment notes have been reviewed and these show that the claimant's mental health has improved with treatment. A January 23, 2009 progress note from Dr. Alt is representative of the claimant's status. On that date, Dr. Alt explained that the claimant was alert and oriented with a pleasant affect and stable mood. Dr. Alt indicated that "all in all, he is doing fairly well. Still struggles with the Indian reservation and his ongoing court issues, but for the most part, psychiatrically, he is stable, in no acute distress. Will maintain his medication." Counselor McBride also noted on December 2, 2008 in a periodic summary, that the claimant's goal has been to deal with his anxiety and depression as a result of being a victim of traumatic physical assault. The claimant had stabilized on medication, had actively been pursuing short term goals, and he was doing what he needed to do by his active involvement in his life and his children's lives. Counselor McBride concluded that the fact the claimant had only seen him five times in the last year and was doing fine on his own told him he was doing what he needed to do to take

care of himself. (Exhibit 17F)[A.R. 343-54]. This evidence supports a finding that the claimant can perform simple, routine tasks.

Overall, the claimant's extreme limitations at the hearing are significantly out of proportion to the objective medical findings when reviewed under the Social Security Ruling 96-7p criteria. On June 29, 2007, approximately one year after the alleged assault, an examination showed a normal abdomen examination, bilateral equal strength in all extremities, and normal gait. The only positive findings were some limited range of motion of the left arm, and reports of radiculopathy to the right leg but without foot drop or neuropathic changes (Exhibit 14F)[A.R. 277-92]. Dr. Singh repeatedly indicated in his assessment that the claimant's abdominal pain was of unclear etiology as there were no abnormalities on examination other than the subjective feeling of pain (Exhibit 4F)[A.R. 204-10]. Despite his allegations of disabling back pain, a MRI showed only mild degenerative disc disease (Exhibit 18F)[A.R. 355-68].

In addition, on November 10, 2008, Dr. Ceton explained that the claimant was seen for a follow-up of back pain, and that he was doing fairly well (Exhibit 18F)[A.R. 355-68], which is again inconsistent with the claimant's allegations that he can barely walk to the mailbox and back. The claimant has also failed [to attend] regular appointments at both physical therapy and counseling (Exhibits 15F, 17F, and 22F)[A.R. 293-341, 343-54, 384-87], which suggests noncompliance. The claimant elected to claim a lawsuit settlement as self-employment income which also brings the claimant's veracity into question (Exhibits 3D and 4D; testimony)[A.R. 125-32]. Further, as clearly stated in the above medical summary, the claimant has abused illegal drugs and has been discharged from care for breaking narcotic contracts which further limits his overall reliability. The claimant's description of spending all day, every day looking out the window in fear that his assailants will return is not corroborated by the mental health records and is instead contradicted by the statements that his condition has stabilized (Exhibits 13F, 15F, 17F, and 22F)[A.R. 265-76, 292-341, 343-54, 384-87]. More weight is given to the state agency medical opinion that the claimant can perform a restricted range of medium work activity which is consistent with the medical findings and treatment. Finally, the residual functional capacity also accommodates the claimant's moderate limitations with regard to maintaining concentration, persistence, and pace by limiting him to simple, routine tasks.

(A.R. 20-25).

The ALJ complied with the requirements of 20 C.F.R. §§ 404.1529, 416.929, and the ALJ's factual finding regarding plaintiff's credibility is supported by more than substantial evidence. It was entirely appropriate for the ALJ to consider the lack of supporting objective medical evidence when he made his finding regarding plaintiff's credibility. *See Tyra v. Secretary of Health & Human*

*Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990).  Plaintiff's credibility was undermined by the absence of significant atrophy or neurological deficits.  *See Crouch v. Secretary of Health & Human Servs.,* 909 F.2d 852, 856–57 (6th Cir.1990) (the absence of atrophy and significant neurological deficits supports the Commissioner's conclusion that the claimant's allegation of severe and disabling pain was not credible); *see also Gaskin v. Commissioner*, 280 F. App'x 472, 477 (6th Cir. 2008).  Further, social security regulations make pellucid that the claimant bears the burden of demonstrating good reasons for his failure to follow prescribed treatment:  "If you do not follow the prescribed treatment without good reason, we will not find you disabled."  20 C.F.R. §§ 404.1530(b), 416.930(b).  The Sixth Circuit recognizes that a claimant's failure to follow prescribed treatment is evidence supporting an ALJ's factual finding that the claimant's testimony was not fully credible.  *See Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988). The ALJ's observation that plaintiff had declined to participate in physical therapy and counseling (A.R. 25) was appropriate and well supported.  Plaintiff's failure to follow prescribed treatment undercut the credibility of his testimony regarding his subjective functional limitations.  *See Sias*., 861 F.2d at 480.

**2.**

Plaintiff argues that the ALJ mischaracterized or "cherry picked" the administrative record.  (Plf. Brief at 12).  This argument is frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence."  *White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009).  The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence.  *See Ulman v. Commissioner*, 2012 WL 3871353, at \* 4; *Bass v. Mahon*, 499 F.3d 506, 509 (6th Cir. 2007).

Plaintiff's argument that the ALJ mischaracterized this administrative record is meritless. The purported instance of "cherry picking" appears in a sentence on page six of the ALJ's opinion where the ALJ noted that on November 10, 2008, Dr. Ceton reported that he was doing fairly well: "On November 10, 2008, Dr. Ceton explained that the claimant was seen for a follow-up of back pain and that he was doing fairly well." (A.R. 22). The ALJ's statement is entirely accurate. On November 10, 2008, Dr. Ceton wrote: "He is doing fairly well." (A.R. 355). Plaintiff argues that the ALJ's discussion of this progress note should have included a discussion of his complaints of abdominal and back pain. (Plf. Brief at 12) (citing A.R. 355). This criticism is insubstantial and unfounded. Plaintiff's pain complaints were addressed, with the primary focus being on Dr. Ceton's response to them:

> The claimant asked for an increase in his Vicodin, but Dr. Ceton was reluctant to comply. Examination showed that the claimant was pleasant and in no acute distress with only mild subprapubic tenderness. Dr. Ceton recommended an updated CT of the abdomen and pelvis and an MRI of the back. Dr. Ceton also indicated that the claimant reported he had stopped physical therapy, which he identified as a warning sign that the claimant was not doing all he said he ha[d] been doing, and in other progress notes voiced concern as to why the claimant had been discharged by Dr. Kahn.

(A.R. 22; *see* A.R. 355-56). The ALJ did not "cherry pick" this administrative record.

### 3.

Plaintiff argues that the ALJ relied on immaterial "bad acts" evidence when he considered plaintiff's drug use in evaluating plaintiff's credibility. (Plf. Brief at 13-15). Plaintiff concedes that the Federal Rules of Evidence do not apply in social security proceedings. (*Id.* at 13). Nonetheless, he argues that the "due process and common law policies" behind the evidence rules prohibit the ALJ's considering of his use of illegal drugs as undermining his credibility. This court

and others have consistently rejected plaintiff's argument. *See Adams v. Commissioner*, No. 1:10-cv-503, 2011 WL 2650688, at * 1 (W.D. Mich. July 6, 2011) ("In assessing a social security claimant's credibility, the ALJ is not prohibited from applying ordinary techniques of credibility evaluation, which would include consideration of lack of candor in other areas such as drug abuse.") (collecting cases); *Smith v. Commissioner*, No. 1:10-cv-14, 2011 WL 3421538, at * 1 (W.D. Mich. Aug. 4, 2011); *see also Miller v. Astrue*, 2:09-cv-650, 2011 WL 1598731, at * 10 (M.D. Fla. Apr. 28, 2011) ("Nothing in the Social Security Act, regulations, or case law prohibited the ALJ from considering [plaintiff's history of drug abuse] in assessing the credibility of Plaintiff's allegations."); *Berry v. Astrue*, No. 1:09-cv-411, 2010 WL 3730983, at * 12 (S.D. Ohio June 18, 2010) ("Plaintiff's drug and alcohol abuse had a negative effect on her credibility as a witness as stated by the ALJ" and "[i]n calling it as she saw it, the ALJ made no error."). I find no basis for disturbing the Commissioner's decision denying plaintiff's claims for DIB and SSI benefits.

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: September 26, 2012      /s/  Joseph G. Scoville
United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas*

*v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).